OXFORD CONSTRUCTION COMPANY, RESPONDENT, v. CITY OF ORANGE AND DOWLING, BUILDING INSPECTOR, ETC., APPELLANT.

Submitted October 29, 1926—Decided May 16, 1927.

A municipal zoning ordinance, which limits the uses of land located in a specified zone to purposes set forth therein, is presumed to be valid. When, however, it affirmatively appears that its enforcement against a particular piece of property located in that zone will not in any way tend to promote the public health, safety and general welfare, such enforcement will be restrained, upon the application of the owner, as constituting an unlawful invasion of his property rights.

On appeal from the Supreme Court, whose *per curiam* is printed in 4 *N. J. Mis. R.* 515.

For the appellants, *William A. Calhoun* and *Spaulding Frazer.*

For the respondent, *Frederic W. Schlosstein.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The Oxford Construction Company, the respondent on this appeal, applied to one Dowling, the building inspector of the city of Orange, for a permit granting permission to erect four brick apartment houses upon a plot of ground located at the corner of Highland and Lincoln avenues, in that city. The application was refused upon the sole ground that the zoning ordinance of the municipality prohibited the erection of such buildings in that locality, no suggestion being made that their presence there would constitute a menace to the health, safety or welfare of the public. Thereupon, the construction company moved before the Supreme Court for the allowance of a writ of *mandamus* to compel the inspector to issue the permit applied for. Upon the final hearing of the cause, it appearing

to the court that the presence of the proposed apartment houses in that locality would not endanger the public welfare, health or safety, a peremptory writ was directed. From the judgment entered pursuant to this direction the municipality and its inspector have appealed.

Counsel for the appellants practically concede that, in its determination of the present case, the Supreme Court has followed the earlier decisions, both of that tribunal and of this court, as to the scope and validity of zoning ordinances with respect to their application to particular premises and with relation to specific complaints against their enforcement. They contend before us, however—as they frequently have done before—that because, as they claim, the views upon which our own decisions rest are not in harmony with those of the courts of some of our sister states, and have been repudiated by the Supreme Court of the United States in the case of *Village of Euclid* v. *Ambler Realty Co.,* decided at its last October term (47 *Sup. Ct. Rep.* 114), this court should disregard the principles upon which its earlier decisions are rested, and follow in the path marked out by the other courts referred to. So far as the decisions of some of our sister states are concerned, the fact that they take a different view of the rights guaranteed to owners of property by constitutional provisions similar to those contained in our own fundamental law does not seem to us to be a valid reason for abandoning our own view as to the scope of the protection afforded by such provisions. As to the contention that the grounds upon which our decisions in zoning cases are rested have been repudiated by the Supreme Court of the United States in the decision in the Euclid case, it seems to us to be based upon a misapprehension of what was involved and what was decided in that case and of the trend of our own decisions. As appears from a reading of the opinion, the village of Euclid had adopted a zoning ordinance similar in its scope to those adopted, not only by a number of the municipalities of our own state, but to those passed by municipalities of some of our sister states. The effect of the ordinance was to limit the use by the owners of lots of land

therein to certain specified purposes, depending upon the particular zone in which said lots were respectively located. The Ambler Realty Company owned sixty-eight acres of land in the municipality, divided into several parcels and located in several different zones. That corporation, after the passage of the ordinance, but before any attempt was made by the municipality to enforce it with respect to the holdings of the corporation, filed a bill in equity, alleging that the ordinance constituted an unlawful invasion of complainant's property rights, guaranteed to it by the federal constitution, and praying "an injunction restraining its enforcement, and all attempts to impose or maintain, as to complainant's property, any of the restrictions, limitations or conditions" contained therein. The conclusion reached by the court was that the complainant was not entitled to the relief sought by it; *i. e.,* an injunction absolutely restraining the enforcement of the ordinance, and any of its restrictions, limitations or conditions against the property owned by it or any portion thereof.

The determination by the court of the question presented to it for its decision is in harmony with our own decided cases. At the March term, 1921, this court had before it for consideration and determination the case of *Cliffside Realty Co.* v. *Cliffside,* 96 *N. J. L.* 278. The suit was brought by the owner of two blocks of land located in the borough of Cliffside which were laid out as building lots. By it the company sought to have declared null and void in all its parts a zoning ordinance, similar in its general characteristics to that involved in the Euclid case, the contention being that it constituted an unlawful invasion of the property rights guaranteed to the company by the constitution. At the time of the institution of the suit there had been no attempt upon the part of the borough to enforce any of the provisions of the ordinance against the property of the company or any portion thereof. This court (adopting the opinion delivered by Mr. Justice Parker in the Supreme Court) held that the statute, pursuant to which the ordinance purported to have been adopted, and which authorized the several municipalities of

the state to provide and enforce such regulations of lands located therein as would tend "to promote the public health, safety and general welfare," was a legitimate exercise of the police power; that the fact that certain provisions in the ordinance were not authorized by the statute, and were invalid, afforded no basis for holding the whole ordinance null and void; that the proper course to be pursued by the landowner was to challenge the validity of such provisions as he considered to be in violation of his constitutional rights when they were attempted to be enforced against him, and that the institution of the proceeding then before the court was premature because no such attempt had, up to that time, been made. The conclusion reached was that, for the reasons indicated, the judgment rendered against the prosecutor in the Supreme Court should be affirmed.

In the later case of *Ignaciunas* v. *Risley* (*sub nom. State* v. *Nutley*), 99 *N. J. L.* 389, this court, considering the validity of a zoning ordinance then before it, pointed out that the power conferred upon a municipality by our legislature to regulate the use to which a property owner might put his property, even to the extent of prohibiting its use for a particular purpose, was limited in its scope to such regulations as would tend to promote the public health, safety and general welfare, and held that the erection of a combined store and dwelling house in a zone in which such erection was prohibited was not in itself a menace to the public health or safety, and that, consequently, the ordinance under review, to the extent that it prevented him from enjoying the full and untrammeled use of his property in a legal manner, was not authorized by the legislature, and was, therefore, to that extent, null and void. For this reason we considered it unnecessary to pass upon the question whether the statute under which the ordinance was attempted to be justified, if it had conferred upon the various municipalities of the state unlimited power to pass these so-called zoning ordinances, would have been violative of the rights of private property guaranteed to the owners thereof by the federal constitution and by the constitution of our own state. But since the promulgation

of this later opinion our courts have frequently been called upon to determine the converse of this proposition; namely, whether such ordinances are valid under the statute, so far as they prohibit the erection of a building of a specified character in a zone where its presence might fairly be considered as constituting a menace to the safety, health or welfare of the community; and both our Supreme Court and this court have consistently upheld the validity of such ordinances to that extent. The cases so holding have been so numerous during the past two years, and the decisions are so universally known to our courts and our bar that a citation of them would be a work of supererogation.

Notwithstanding this line of decisions it is contended by counsel for the appellants that the reasons upon which the Supreme Court of the United States based its decision are opposed to the views which underlie our adjudications upon the question of the validity of zoning ordinances, in their application to buildings of a specified character proposed to be erected in zones where, by the terms of the ordinance, they are excluded. But, as we read the opinion, this contention is not warranted. That court expressly declared that when, if ever, the provisions set forth in the ordinance under review should come to be concretely applied to particular premises, or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, might be found to be clearly arbitrary and unreasonable. Having so stated, it then pointed out that the Ambler Realty Company did not base its right to the relief prayed for upon the ground of a present infringement upon or denial of a specific right, but upon the broad ground that the mere existence and threatened enforcement of the ordinance constituted a present and irreparable injury—and then held that the ordinance, in its general scope and dominant features, so far as its provisions were involved in the case before the court, was a valid exercise of the police power; and *"left other provisions to be dealt with as cases arise directly involving them."* In so holding the United States Supreme Court not only reached the same conclusion as that

expressed by us in *Cliffside Realty Co.* v. *Cliffside, supra,* but rested it upon the same grounds.

Turning to some of our later decisions, it will be found upon a reading of them that the views of our courts are not out of harmony with that expressed in the above recital. A reference to two of them will be sufficient to make this apparent. In *Portnoff* v. *Bigelow, Building Superintendent,* 4 *N. J. Mis. R.* 539, the relator sought to obtain a *mandamus* compelling the superintendent to issue to him a permit for the erection of a building in a zone from which buildings of the character of that proposed to be constructed were excluded by the terms of the ordinance. The court held that "a zoning ordinance, like other ordinances, may be reasonable in some aspects and unreasonable in others; that the presumption is that it is reasonable," so far as its attempted enforcement against the property involved was concerned, and that, because such presumption was not rebutted by proof, the relator's application for the writ should be denied. In *Long* v. *Scott, Building Inspector,* 4 *Id.* 587, the question for determination, as stated in the opinion, was whether the zoning ordinance then under review, in its application to the premises of the relator, "was an unreasonable, and, therefore, an unlawful, exercise of the police power." The court held that the presumption was "that it is reasonable," and that, because of the absence of proof overcoming this presumption, the relator was not entitled to the relief sought by him.

Counsel for the appellants further argue that the federal court, although the question was perhaps not involved in its decision, expressly disapproved, in the opinion delivered by it, of the views which it attributed to the courts of this state as the grounds upon which their conclusions with relation to certain provisions of zoning ordinances were rested, and contend that, for this reason alone, we should abandon those views. It is true that the opinion contains such disapproval. It recites that the courts of New Jersey have either denied altogether or narrowly limited the power of the legislature to authorize the adoption of ordinances creating and maintaining residential districts from which business and trade of

every sort, including hotels and apartment houses are excluded, and disapproves of that judicial action. But this statement is based entirely upon expressions contained in the opinion of our Supreme Court in the case of *Ignaciunas* v. *Risley,* 98 *N. J. L.* 712, which were not adopted by this court when the case came before us for review, and ignores entirely the later decisions of our courts, which have been hereinbefore referred to.

We see nothing in the grounds of reversal which have been urged by counsel that would justify us in abandoning the views expressed in our earlier decisions involving the question of the validity of zoning ordinances, and the judgment under review will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, KALISCH, BLACK, CAMPBELL, WHITE, VAN BUSKIRK. MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 12.

*For reversal*—None.